**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TWENTY-NINE PALMS BAND OF MISSION INDIANS, a Federally Recognized Indian Tribe doing business as Twenty-Nine Palms Distribution, | No. 25-2340 |
| | D.C. No. 5:24-cv-00379-SSS-SP |
| *Plaintiff - Appellant*, | |
| v. | OPINION |
| TODD BLANCHE, Acting Attorney General; DOJ - UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, Director, U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, in his official capacity; UNITED STATES BUREAU OF ALCOHOL TOBACCO FIREARMS & EXPLOSIVES, | |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Central District of California
Sunshine Suzanne Sykes, District Judge, Presiding

Argued and Submitted February 18, 2026
El Centro, California

Filed May 6, 2026

Before: Richard C. Tallman and John B. Owens, Circuit Judges, and Ruth Bermudez Montenegro, District Judge.[*]

Opinion by Judge Tallman

---

**SUMMARY**[**]

---

**Prevent All Cigarette Trafficking Act / California Law**

The panel affirmed the district court's summary judgment in favor of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in an action brought by the Twenty-Nine Palms Band of Mission Indians—a federally recognized tribe in southern California that sells cigarettes exclusively to other California tribes—challenging ATF's decision to place the Tribe on the non-compliant list under the Prevent All Cigarette Trafficking ("PACT") Act for selling cigarettes in violation of California law.

The PACT Act requires any persons engaged in the sale, transfer, or shipment of cigarettes into a state or Indian

---

[*] The Honorable Ruth Bermudez Montenegro, United States District Judge for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

country that taxes cigarettes to register with the ATF and file monthly reports. The Act also requires any person (including Indian tribes) making a "delivery sale" into a state to comply with that state's cigarette laws. The Act establishes a non-compliant list of known delivery sellers who fail to comply with the Act.

The panel held that ATF did not violate the Administrative Procedure Act ("APA") by placing the Tribe on the non-compliant list. First, the Tribe's remote cigarette sales to other tribes are off-reservation conduct to which California's Cigarette and Tobacco Products Tax Law (the "Tax Law") and Cigarette and Tobacco Products Licensing Act (the "Licensing Act") apply. Second, the Tribe's off-reservation sales to Native Nation Customers—tribal businesses that sell cigarettes to individual consumers on their respective reservations—are delivery sales to consumers under the PACT Act and subject the Tribe to the PACT Act's delivery seller requirements. Third, the Tribe violated the PACT Act's delivery seller requirements. As a delivery seller, the Tribe must comply with state laws applicable to the sale of cigarettes. The Tribe violated California's Tax Law and Licensing Act when the Tribe sold untaxed cigarettes, purchased from out of state, to more than fifty tribal retailers without a distributor license. Because the Tribe violated applicable California law, it violated the PACT Act, and was therefore subject to inclusion on the non-compliant list.

Finally, the panel held that ATF did not violate the procedural requirements of the PACT Act or the APA, and rejected the Tribe's arguments that ATF failed to provide adequate notice before placing the Tribe on the non-compliant list, that ATF failed to provide an adequate explanation of its decision to include the Tribe on the non-

compliant list, and that there was insufficient evidence to support ATF's decision to place the Tribe on the non-compliant list.

## COUNSEL

Adam G. Unikowsky (argued), Charles W. Galbraith, and Andrew C. DeGuglielmo, Jenner & Block LLP, Washington, D.C.; Jesse D. Heibel, Barnhouse Keegan Solimon & West LLP, Los Ranchos de Albuquerque, New Mexico; for Plaintiff-Appellant.

Laura E. Myron (argued) and Michael S. Raab, Attorneys, Appellate Staff; Bilal A. Essayli, United States Attorney; Brett A. Schumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

Peter F. Nascenzi, Deputy Attorney General; James V. Hart, Supervising Deputy Attorney General; Neli Palma, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Sacramento, California; for Amicus Curiae State of California.

## OPINION

TALLMAN, Circuit Judge:

The Twenty-Nine Palms Band of Mission Indians ("Twenty-Nine Palms" or the "Tribe"), a federally recognized tribe in southern California, sells cigarettes exclusively to other California tribes.  Those tribes, in turn, sell cigarettes to individual consumers at markets, smoke shops, and gas stations on their respective reservations. Twenty-Nine Palms does not hold a state license to distribute cigarettes.  Neither do its customers.  And no one in the distribution chain collects state cigarette taxes.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") placed Twenty-Nine Palms on the Prevent All Cigarette Trafficking ("PACT") Act's non-compliant list for selling cigarettes in violation of California law.  Twenty-Nine Palms contends that decision was contrary to law and procedurally deficient.  Finding the decision adequately reasoned and procedurally sound, the district court granted summary judgment to ATF.  On appeal, we consider whether remote cigarette sales from one tribe to another are "off-reservation" activities subject to state law.  We conclude they are, and we affirm.

### I

We begin with the statutory framework.  First, the PACT Act.  Then, California's cigarette laws.

### A

The PACT Act is a federal statute that aims to combat illicit trafficking of untaxed cigarettes.  *See* Pub. L. No. 111–154, § 1(c).  It does so by subjecting remote sellers—those

operating online, over the phone, or by mail—to the same state tax and licensing requirements applicable to traditional tobacco retailers.    *See id.* § 1(b)(4), (c)(1); 15 U.S.C. § 376a(a).  Three provisions are relevant here.

First, the PACT Act requires any person engaged in the sale, transfer, or shipment of cigarettes into a state or Indian country that taxes cigarettes to register with ATF and file monthly reports.  *See* 15 U.S.C. § 376(a).

Second—and most importantly—the statute requires any person (including Indian tribes) making a "delivery sale" into a state to comply with that state's cigarette laws, including licensing requirements and payment of excise taxes.  *Id.* §§ 375(11), 376a(a)(3).  A "delivery sale" is a sale of cigarettes or smokeless tobacco to a "consumer" who is not physically present when the purchase is submitted or delivered (i.e., remote sales).  *Id.* § 375(5).  A "consumer" is "any person that purchases cigarettes or smokeless tobacco," except those who are "lawfully operating as a manufacturer, distributor, wholesaler, or retailer."    *Id.*  § 375(4). Accordingly, sales to retailers that are *not* lawfully operating are sales to "consumers."  And the person making those sales is a "delivery seller" who must

> comply with . . . (3) all State, local, tribal, and other laws generally applicable to sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the specific State and place, including laws imposing—(A) excise taxes; [and] (B) licensing    and    tax-stamping requirements . . . .

*Id.* § 376a(a).

Third, the PACT Act establishes a non-compliant list: a regulatory record of known delivery sellers who fail to comply with the statute.  *Id.* § 376a(e)(1).  Once a delivery seller is placed on the list, the PACT Act prohibits any person—including common carriers—from knowingly delivering that seller's cigarettes.  *See id.* § 376a(e)(2). Because remote sellers rely on common carriers to deliver their products, this prohibition is a powerful stick.

This case turns on whether ATF properly concluded that the Tribe's customers are "consumers" under the PACT Act. Whether they are consumers turns on whether they are "lawfully operating."   And whether they are lawfully operating turns on whether they are subject to and violate California law.  If the Tribe sells cigarettes to distributors or retailers subject to and operating in violation of California law, it violates the PACT Act and is subject to listing.

## B

Relevant here are two California laws: the Cigarette and Tobacco Products Licensing Act of 2003 (the "Licensing Act"), Cal. Bus. & Prof. Code §§ 22970–22991, and the Cigarette and Tobacco Products Tax Law (the "Tax Law"), Cal. Rev. & Tax Code §§ 30001–30483.

The Licensing Act requires cigarette distributors and retailers to obtain a state-issued license to engage in cigarette sales.  *See* Cal. Bus. & Prof. Code §§ 22972, 22975. Retailers and distributors may not purchase cigarettes from an unlicensed entity.  *See id.* § 22980.1(d)(1), (2).  And a distributor may not sell cigarettes to unlicensed entities.  *See id.* § 22980.1(b)(1).

The Tax Law imposes an excise tax on cigarette "distribution."  *See* Cal. Rev. & Tax Code §§ 30008–30011,

30101–30136.  Distribution includes "[t]he sale of untaxed cigarettes" and placing untaxed cigarettes "in retail stock for the purpose of selling [them] to consumers."[1]  *Id.* §§ 30008, 30011.  Under this definition then, virtually all retailers are distributors.  And distributors must be licensed, *id.* § 30140; comply with reporting requirements, *id.* §§ 30182, 30183; and collect taxes on taxable sales.  *Id.* § 30108.

There are exceptions.  Cigarettes sold "by a Native American tribe to a member of that tribe on that tribe's land" are generally "exempt from state excise tax pursuant to federal law."  Cal. Health & Safety Code § 104556(j).  But that exception does not apply where a tribe sells cigarettes to non-tribal members, which include both non-Indians and Indians enrolled in other tribes.  *Cf. id.*; *see Washington v. Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 161 (1980) (explaining that "[f]or most practical purposes," Indians who are not members of the governing tribe "stand on the same footing as non-Indians").

## II

Twenty-Nine Palms operates a wholesale tobacco distribution business.  It sells cigarettes and tobacco products exclusively to businesses owned and operated by federally recognized tribes (including its own) and located on those tribes' reservations, all of which are within California's geographic boundaries.  Those tribal businesses (also known as "Native Nation Customers" or "NNCs") then sell cigarettes to individual consumers on their respective reservations.

---

[1] "Untaxed cigarette" means any cigarette that has not yet been distributed in such a way that results in tax liability under the Tax Law. Cal. Rev. & Tax. Code § 30005.

In February 2022, the California Department of Justice sent Twenty-Nine Palms a letter regarding its lack of compliance with the PACT Act.  Receiving no response, in July 2022, California asked ATF to add the Tribe to the non-compliant list.  In August 2022, ATF notified Twenty-Nine Palms by letter that it was considering doing so.  In that letter, ATF explained that it was informed that the Tribe had received "millions of out-of-state cigarettes" that it sold "to non-tribal members" despite the Tribe's failure to register with California as a distributor and despite its failure to "submit its PACT Act registration" and "required monthly reports."  ATF warned that such conduct might violate the PACT Act's reporting requirements and the delivery seller requirement to comply with state law.

The Tribe responded in October 2022, contending that the PACT Act's reporting requirements are inapplicable to the Tribe's sales because they were not in "interstate commerce" as defined by the statute.[2]  California disagreed, but nonetheless withdrew its listing request in April 2023 after the Tribe began submitting PACT Act reports.

In June 2023, ATF sent Twenty-Nine Palms a second letter explaining that despite California's withdrawal, the Tribe was still in violation of the PACT Act because it was selling cigarettes "to unlicensed persons operating within the State" and "failing to comply with payment obligations and legal regulatory requirements relating to the sale or delivery of . . . cigarettes . . . in violation of 15 U.S.C. § 376a(a)(3) and (4)."  ATF explained that the Tribe "is not licensed to distribute tobacco in California," and that "[a]nalysis of third-party shipping records, [the Tribe's] PACT Act reports," and "communications with attorneys representing

---

[2] The Tribe does not renew its interstate commerce argument on appeal.

[the Tribe's cigarette supplier] . . . establish that from 2022[–]2023, [Twenty-Nine] Palms purchased millions of untaxed, unstamped cigarettes and significant quantities of untaxed, smokeless tobacco" from a wholesaler in New York.  The Tribe shipped those products into California and sold them to unlicensed tribal retailers on other reservations "in violation of California law."

ATF further explained that under *Big Sandy Rancheria Enterprises v. Bonta*, 1 F.4th 710 (9th Cir. 2021), "[Twenty-Nine] Palms' intertribal wholesale cigarette sales to the unlicensed Tribal Retailers are 'off reservation' activity that remain subject to California's non-discriminatory licensing and excise tax statutes."  Considering the Tribe's "hundreds of past and present violations of the PACT Act spanning several years," ATF informed the Tribe that it would be placed on the non-compliant list effective July 20, 2023.

The Tribe challenged its placement on the non-compliant list in a letter dated October 2, 2023.  It did not dispute the facts alleged, but it contested the PACT Act's application to its cigarette sales.

ATF subsequently conferred with California, which confirmed that none of Twenty-Nine Palms' customers held cigarette distributor licenses, meaning that none had collected or remitted California cigarette taxes.  California also confirmed that only a handful of the Tribe's customers held retail licenses.

In a fourteen-page letter, dated October 19, 2023, ATF rejected the Tribe's arguments, concluding that the Tribe's NNCs "are not lawfully operating under California law" making them "consumers" under the PACT Act, and that "[the Tribe's] off-reservation sales [to its NNCs] are 'delivery sales' . . . which are not in compliance with

applicable California law in violation of [the Act]." ATF informed the Tribe that it would be placed on the non-compliant list the following month, but subsequently agreed to postpone listing.

In February 2024, the Tribe filed this suit raising Administrative Procedure Act ("APA") challenges to ATF's decision. The district court granted ATF's motion for summary judgment, concluding that the agency's decision to list the Tribe was not arbitrary, capricious, or contrary to law, and that ATF had observed the proper procedures. The court explained that "the basis of ATF's decision is that the Tribe must comply with state law under the PACT Act" because it is a "'delivery seller' and its customers are 'consumers'" under the statute. ATF placed the Tribe on the non-compliant list effective March 10, 2025. This appeal followed.

## III

Because this is an APA suit, the district court had original jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. "We review de novo a district court's grant of summary judgment." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 33 F.4th 1202, 1216 (9th Cir. 2022).

Under the APA, we set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Agency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in

view or the product of agency expertise.'" *350 Mont. v. Haaland*, 50 F.4th 1254, 1263 (9th Cir. 2022) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

## IV

We first consider whether ATF violated the APA by placing Twenty-Nine Palms on the non-compliant list. The Tribe contends that ATF acted arbitrarily and capriciously by concluding that (1) its intertribal sales are subject to California law; (2) the Tribe is subject to the PACT Act's delivery seller requirements; and (3) the Tribe violated those requirements. We address each in turn.

## A

ATF determined that "[Twenty-Nine] Palms' intertribal wholesale cigarette sales to the unlicensed Tribal Retailers are 'off reservation' activity that remain subject to California's non-discriminatory licensing and excise tax statutes." The Tribe asserts that "there is no off-reservation conduct at issue" in this case. Our precedent suggests otherwise. But, to the extent there is any doubt, we hold that remote sales from one tribe to another are "'off reservation' activit[ies] subject to non-discriminatory state laws of general application." *Big Sandy*, 1 F.4th at 729.

In *Big Sandy*, we held that "tribe-to-tribe sales made outside the tribal enterprise's reservation [are] off-reservation activity subject to" California law. *Id.* (citation modified). There, a tribal cigarette distributor challenged California's cigarette tax and licensing requirements, as applied to off-reservation sales, on the ground that they were preempted by "federal common law and tribal sovereignty." *Id.* at 719. Rejecting that argument, we explained that "when

a tribe or tribal members act outside *their reservation*, they are subject to non-discriminatory state law otherwise applicable to all citizens of the State, absent express federal law to the contrary." *Id.* at 726 (emphasis added) (citation modified).

It did not matter that the sales occurred entirely within "Indian country." *Id.* at 729. "[W]hen Indians act outside of their own [territory], *including within the Indian country of another tribe*, they are subject to non-discriminatory state laws." *Id.* (quoting *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1172 (10th Cir. 2012)) (citation modified). The distributor's argument to the contrary ignored the "significant geographical component to tribal sovereignty," which "does not extend beyond what is necessary to protect tribal self-government or to control internal relations." *Id.* at 725, 729 (citation modified). Indian tribes possess "attributes of sovereignty over . . . *their* members and *their* territory." *Id.* at 729 (citation omitted). So, generally applicable state laws are not likely to infringe on tribal sovereignty when a tribe acts outside its territory with members of other tribes. Moreover, a tribe does not have "expansive immunity from ordinary" regulation applicable to "businesses throughout the State" when that tribe acts "beyond *its* reservation borders for the purpose of carrying on a business enterprise." *Id.* (quoting *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157 (1973)).

Twenty-Nine Palms contends that the *Big Sandy* distributor's concession that it left the reservation to sell cigarettes to tribal retailers is a "dispositive factual distinction" that renders *Big Sandy*'s holding inapplicable. It is not.

Here, the Tribe sells cigarettes to retailers from other tribes.  Those sales happen remotely and the Tribe ships cigarettes from its reservation, through various parts of California, to other tribes' reservations within the state.  Like the distributor in *Big Sandy*, the Tribe acts "beyond its reservation borders for the purpose of carrying on a business enterprise."   *Mescalero*, 411 U.S. at 157.   Accordingly, Twenty-Nine Palms' remote cigarette sales to other tribes are off-reservation conduct to which California's Tax Law and Licensing Act apply.

## B

Next, ATF determined that the Tribe's off-reservation sales to NNCs are "delivery sales" to "consumers" under the PACT Act.  The Act defines a "delivery sale" as "any sale of cigarettes or smokeless tobacco to a consumer" that occurs remotely, such that the seller is not "in the physical presence of the buyer when the request for purchase or order is made."  15 U.S.C. § 375(5).  Because the Tribe is not "in the physical presence" of its NNCs, its sales are remote.  The Tribe does not argue otherwise.  Rather, it contends that it is not subject to the Act's delivery seller requirements because it does not sell to "consumers" within the meaning of the statute.

 The PACT Act defines "consumer" as "any person that purchases cigarettes or smokeless tobacco" except those "lawfully operating as a manufacturer, distributor, wholesaler or retailer" of those products.  *Id.* § 375(4).

The Tribe contends that its NNCs are not "consumers" because they are retailers who operate lawfully.   In the Tribe's view, the NNCs operate lawfully because federal Indian law preempts California's licensing requirements with respect to *on-reservation* activities.  But, as discussed,

the NNCs' transactions with Twenty-Nine Palms are off-reservation activities subject to California law. Accordingly, to operate lawfully, the NNCs must comply with California's tax and licensing requirements with respect to those transactions. They do not, and we therefore need not reach the question of whether their on-reservation retail activity can be subject to California law.

ATF properly concluded that the Tribe's NNCs violate the Licensing Act. The Act places limits on the types of entities from which cigarette retailers and distributors may purchase cigarettes. Specifically, it prohibits "retailer[s] . . . [from] purchas[ing] cigarettes or tobacco products from any person who is not licensed." Cal. Bus. & Prof. Code § 22980.1(d)(1). And it prohibits "distributor[s] . . . [from] purchas[ing] cigarettes or tobacco products from any person who is required to be licensed" but is not. *Id.* § 22980.1(d)(2).

The NNCs are "retailers" because they "engage[] . . . in the sale of cigarettes or tobacco products directly to the public from a retail location." *Id.* § 22971(r). They are also "distributors" because they "plac[e] . . . untaxed cigarettes or tobacco products . . . in retail stock for the purpose of selling [those] products to consumers." Cal. Rev. & Tax Code § 30008(c); *see* Cal. Bus. & Prof. Code § 22971(f) (defining "distributor" by reference to the Tax Law). Because the NNCs are "retailers" and "distributors" under the Licensing Act, they must comply with its limitations in transacting with Twenty-Nine Palms, which is required to be licensed, but is not.

Twenty-Nine Palms is required to be licensed because it, too, is a "distributor" and the Licensing Act requires "every distributor . . . [to] annually obtain and maintain a license to

engage in the sale of cigarettes or tobacco products."  Cal. Bus. & Prof. Code § 22975(a).  Twenty-Nine Palms is a "distributor" under the Licensing Act for at least two reasons.  First, it engages in "[t]he sale of untaxed cigarettes or tobacco products in this state," Cal. Rev. & Tax Code § 30008(a), as evidenced by its sales to the NNCs.  And second, it "sells or accepts orders for cigarettes" that are transported from out of state to consumers within the state, *id.* § 30011(c), as evidenced by the fact that it purchases cigarettes from New York and then sells them to tribal retailers.

Because the NNCs are "retailers" and "distributors" that purchase cigarettes from an unlicensed distributor (Twenty-Nine Palms) in off-reservation transactions that are subject to California law, they violate the Licensing Act.  ATF therefore correctly concluded that the NNCs violate the Licensing Act.  Because the NNCs violate applicable California law, they are not "lawfully operating."[3]  15 U.S.C. § 375(4).  Their failure to operate lawfully makes them "consumers" under the PACT Act and subjects the Tribe to the statute's delivery seller requirements.

---

[3] Notwithstanding the NNCs' violations, the Tribe invites us to determine whether federal Indian law and principles of tribal sovereignty prohibit California from imposing its licensing requirements on tribal retailers with respect to on-reservation business operations.  We need not make that determination because Twenty-Nine Palms and its NNCs engage in off-reservation transactions, which are subject to California's licensing requirements, and, as discussed, ATF reasonably concluded that the NNCs violated those requirements with respect to those transactions.

## C

ATF properly determined that Twenty-Nine Palms violated the PACT Act's delivery seller requirements. As a "delivery seller," the Tribe must comply with state laws applicable to the sale of cigarettes, including California's Licensing Act and Tax Law. *See* 15 U.S.C. § 376a(a)(3). The Tribe violated both.

The Licensing Act and the Tax Law require cigarette distributors to be licensed. *See* Cal. Bus. & Prof. Code § 22975(a); Cal. Rev. & Tax. Code § 30140. The Licensing Act also prohibits distributors from selling cigarettes to unlicensed entities. Cal. Bus. & Prof. Code § 22980.1(b)(1). As explained, Twenty-Nine Palms is a distributor. *See* Cal. Rev. & Tax Code §§ 30008(a), 30011(c); Cal. Bus. & Prof. Code § 22971(f) (defining "distributor" by reference to the Tax Law). And Twenty-Nine Palms does not hold a license. Yet, the Tribe sold untaxed cigarettes, purchased from out of state, to more than fifty tribal retailers, which, except for a few, are all unlicensed. Because the Tribe did so without a distributor license, it violated both the Licensing Act and the Tax Law. Because the Tribe violates applicable California law, it violates the PACT Act, and is therefore subject to inclusion on the non-compliant list.

## V

Twenty-Nine Palms also raises three procedural complaints: (1) ATF failed to provide adequate notice in its June 2023 letter; (2) ATF failed to provide an adequate explanation in its October 2023 decision; and (3) ATF's decision was not supported by adequate evidence. None has merit.

**A**

First, notice.  Before listing a delivery seller on the non-compliant list, ATF must provide notice and "cite the relevant provisions of [the PACT Act] and the specific reasons for which the delivery seller is being placed on the list[.]"  15 U.S.C. § 376a(e)(1)(E)(ii).

In its June 2023 letter, ATF cited the relevant provisions of the PACT Act and explained why the Tribe was violating them.  ATF stated that the Tribe was in violation of 15 U.S.C. § 376a(a)(3) and (4) for failure to comply with applicable state laws, including "California's non-discriminatory licensing and excise tax statutes."  ATF further explained that "[the Tribe] is not licensed to distribute tobacco in California" and that it "shipped and sold unstamped cigarettes and untaxed smokeless tobacco to non-tribal members, who are not licensed . . . in California to possess and sell [those products], in violation of California law."  Moreover, ATF explained that under *Big Sandy*—a case that specifically addresses (and cites) the tax and licensing requirements at issue here—the Tribe's "intertribal wholesale cigarette sales to the unlicensed Tribal Retailers are . . . subject to California's non-discriminatory licensing and excise tax statutes."

The Tribe argues that this letter was inadequate because ATF did not specifically cite the California statutes that the Tribe and NNCs had allegedly violated.  But the PACT Act does not require ATF to do so, and the notice letter nonetheless provides information specific enough for the Tribe to understand and respond to the allegations.  Indeed, the Tribe responded to the notice letter by making essentially the same arguments it makes now: that its sales "do not violate [the PACT Act] because California's laws regarding

taxation and licensing do not apply," and that its NNCs are not "consumers" under the PACT Act because they are lawfully operating.  Accordingly, ATF provided adequate notice of its "specific reasons" for placing the Tribe on the non-compliant list.

## B

The Tribe also argues that ATF's October 2023 decision was inadequate because it "entirely failed to consider an important aspect of the problem."  *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 39 (9th Cir. 2025).

First, the Tribe contends that ATF's explanation was insufficient because ATF did not apply the balancing test under *Wildlife Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980).  Because the Tribe asserts that ATF's decision hinged on the NNCs' failure to collect taxes on on-reservation retail sales, it maintains that ATF should have applied *Bracker* to determine whether those sales could be taxed.  But ATF's decision did not hinge solely on that basis: it also based its decision on the fact that the NNCs purchased cigarettes from an unlicensed distributor—the Tribe—in *off-reservation* sales to which California's tax and licensing requirements apply.  And because "balancing interests under *Bracker* when the regulated activity is off-reservation is 'inconsistent with the special geographic sovereignty concerns that gave rise to that test,'" *Big Sandy*, 1 F.4th at 726 (quoting *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 113 (2005)), ATF reasonably concluded "the *Bracker* analysis does not apply."

Second, Twenty-Nine Palms contends that ATF's explanation was insufficient because it did not adequately address the fact that California withdrew its request to put the Tribe on the non-compliant list.  ATF acknowledged the

withdrawal but explained that because California provided information indicating that the Tribe was nonetheless in violation of the PACT Act, it would proceed with listing. The PACT Act requires as much, directing the Attorney General to compile a list of non-compliant delivery sellers, including those "identified by any State."   15 U.S.C. § 376a(e)(1)(A), (D).   California identified the Tribe, and while it later withdrew its nomination, nothing in the PACT Act requires a state to have nominated a delivery seller prior to its inclusion on the non-compliant list.  Further, nothing requires ATF to remove or stop investigating a delivery seller if a state withdraws its nomination.

### C

Finally, Twenty-Nine Palms contends that there was insufficient evidence to support ATF's decision to place it on the non-compliant list.

But ATF highlighted the evidence it relied on to conclude that the Tribe was in violation of the PACT Act. ATF explained that the Tribe is not licensed to distribute tobacco by the federal government or California, and that "[a]nalysis of third-party shipping records, [the Tribe's] PACT Act reports . . . , and communications with attorneys representing [its supplier] . . . establish that from 2022[–]2023, [Twenty-Nine] Palms purchased millions of untaxed, unstamped cigarettes" from entities in New York that it shipped into California and sold to third-party retailers who sold them to non-tribal members.  The administrative record includes those shipping records, a list of the Tribe's NNCs, and letters from California explaining that the Tribe is not licensed to distribute tobacco and that its customers do not hold distributor or retail licenses.  Moreover, the Tribe does not dispute that it is unlicensed, that its customers sell

untaxed cigarettes, or that it sold millions of cigarettes to unlicensed tribal retailers in the two years preceding ATF's decision.  Nor does the Tribe suggest that its business model or customers have changed since ATF sent its notice letter in 2023.

Accordingly, the undisputed record evidence provides a sufficient basis to substantiate the Tribe's cigarette sales to its NNCs, and to support ATF's decision.  ATF did not violate the procedural requirements of the PACT Act or the APA.

## VI

We conclude that ATF's decision to place Twenty-Nine Palms on the non-compliant list was not arbitrary, capricious, an abuse of discretion, or contrary to law.  Twenty-Nine Palms' remote cigarette sales to retailers of other tribes are "off-reservation" activities subject to California's Licensing Act and Tax Law; those retailers are "consumers" under the PACT Act; and the Tribe violated the Act's delivery seller requirements.  We also conclude that ATF's decision was procedurally sound.  The district court properly granted summary judgment to ATF.

**AFFIRMED.**